Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| LINETTE CONCEPCIÓN SANTANA<br><br>Parte Apelante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Parte Apelada | TA2026AP00188 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. CG2024CV02978<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Comparece ante nos, la Sra. Linette Concepción Santana (señora Concepción Santana), mediante recurso de *apelación* y solicita que revisemos la *Sentencia* emitida el 20 de noviembre de 2025, y notificada el 21 de noviembre de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Humacao.[1] Mediante el referido dictamen, el foro primario desestimó la causa de acción instada contra el Estado Libre Asociado de Puerto Rico, por sí y en representación del Departamento de Seguridad Pública, y el Departamento de Justicia en representación del comandante Rafael A. Figueroa Solís, el coronel Samuel Luciano Rivas y la coronel Alba I. Díaz Torres (en conjunto, los codemandados).

En síntesis, la señora Concepción Santana arguye que el TPI erró al desestimar sus reclamos, dado que, utilizando el estándar establecido por la jurisprudencia en el análisis de una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *infra,* e interpretando las alegaciones de la demanda de la manera

---

[1] *Apelación*, SUMAC-TA del recurso TA2026AP00188, Entrada 1.

más favorable para la parte reclamante, se demuestra que ella cuenta con una causa de acción que justificaba la concesión de un remedio.

Por su parte, en su *Alegato en Oposición,* los codemandados aducen que el foro apelado correctamente desestimó las causas de acción sobre discrimen, acoso laboral y represalias incoadas por la señora Concepción Santana, toda vez que ésta, previo a instar su reclamo judicial, incumplió con el requisito de notificar al Estado su intención de presentar una demanda en su contra y tampoco agotó los remedios administrativos disponibles.

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 17 de agosto de 2024, la señora Concepción Santana incoó una *Demanda* sobre daños y perjuicios contra los codemandados Estado Libre Asociado (ELA), por sí y en representación del Departamento de Seguridad Pública (Negociado de la Policía de Puerto Rico), y el Departamento de Justicia en representación del Sr. Rafael A. Figueroa Solís, el coronel Samuel Luciano Rivas y la coronel Alba I. Díaz Torres.[2] Según sus alegaciones, fue objeto de represalias y discrimen por razón de sexo y discapacidad, manifestados en hostigamiento laboral continuo, interferencia en sus labores y otros actos relacionados, los cuales le causaron daños físicos, malestar, angustias mentales, perjuicio a su reputación y bochorno público, así como pérdidas económicas.

Luego de varias incidencias procesales, el 31 de octubre de 2024, el ELA presentó una *Moción de Desestimación* al amparo de la

---

[2] Véase, expediente electrónico del caso CG2024CV02978 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda.*

Regla 10.2 de Procedimiento Civil, *infra*.[3] En esta, sostuvo que el emplazamiento incumplió con la Regla 4.2 de Procedimiento Civil, 32 LPRA Ap. V, toda vez que presentó un defecto de forma al requerirle que presentara su alegación responsiva dentro de treinta (30) días de haberle sido diligenciado, cuando le asistía un término de sesenta (60) días. Asimismo, planteó que la causa de acción de la señora Concepción Santana se encontraba prescrita y que la Comisión Apelativa del Servicio Público (CASP) tenía jurisdicción primaria exclusiva para atender todos aquellos asuntos obrero-patronales alegados en la demanda. Por último, añadió que la querella núm. 2024-00672 en la Superintendencia Auxiliar de Responsabilidad Profesional (SARP) no contaba con una determinación final por parte de la agencia, por lo que reiteró que el tribunal no tenía jurisdicción sobre la controversia, puesto que aún no había culminado el trámite administrativo.

Por su parte, el 12 de noviembre de 2024, el Sr. Rafael A. Figueroa Solís, por conducto del Departamento de Justicia, presentó una *Moción de Desestimación de la Parte Compareciente en su Carácter Personal* al amparo de la Regla 10.2 de Procedimiento Civil, *infra*.[4] En síntesis, adujo que la CASP era quien poseía jurisdicción primaria para atender la controversia, pues la señora Concepción Santana había presentado previamente una querella administrativa y la agencia aún no había emitido una resolución final sobre la misma. Además, sostuvo que, aun tomando como ciertos los hechos alegados en la demanda, debía concluirse que las actuaciones a él imputadas se realizaron en función de su puesto y en el ejercicio de las facultades de su cargo, por lo que no le podían ser atribuidas ni vinculadas a su carácter personal. Además, resaltó la

---

[3] *Íd.,* Entrada 23, *Moción de Desestimación.*
[4] *Íd.,* Entrada 25, *Moción de Desestimación de la Parte Compareciente en su Carácter Personal.*

inaplicabilidad de la Ley 100-1959, *infra,* y la Ley 115-1991, *infra,* pues adujo que la primera fue creada para la empresa privada y la segunda para el patrono.

Posteriormente, el 21 de noviembre de 2024, el Sr. Samuel Luciano Rivas y la Sra. Alba I. Díaz Torres presentaron individualmente sus respectivos escritos intitulados *Moción de Desestimación de la Parte Compareciente en su Carácter Personal.*[5] Ambas partes adujeron que en la demanda no se presentaron alegaciones de hechos que los expusieran a responsabilidad en su carácter individual ni a tener que resarcir a la parte demandante con su propio pecunio, pues solo fueron mencionados en su carácter oficial. En ese sentido, arguyeron que les cobijaba la doctrina de inmunidad condicionada.

En respuesta, el 3 de diciembre de 2024, la señora Concepción Santana presentó su *Oposición a "Moción de Desestimación de la Parte Compareciente en su Carácter Personal".*[6] En esta replicó, *inter alia,* que los daños sufridos por su persona y las actuaciones ilegales y discriminatorias del señor Figueroa Solís evidenciaban claramente una violación de derechos, lo que justificaba preterir el trámite administrativo para que el caso fuese atendido por el tribunal.

Luego, el 4 de diciembre de 2024, la señora Concepción Santana instó otra *Oposición a "Moción de Desestimación".*[7] Allí sostuvo que el alegado defecto en el emplazamiento no privó al ELA de presentar su alegación responsiva dentro del término establecido para ello. También arguyó que, si bien el ELA hizo referencia a una carta de notificación de posible demanda del año 2018 para sustentar su planteamiento de prescripción, los incidentes y las personas allí mencionados nada tenían que ver con los hechos que

---

[5] *Íd.,* Entradas 29 y 30, *Moción de Desestimación de la Parte Compareciente en su Carácter Personal.*
[6] *Íd.,* Entrada 36, *Oposición a "Moción de Desestimación de la Parte Compareciente en su Carácter Personal".*
[7] *Íd.,* Entrada 38, *Oposición a "Moción de Desestimación".*

motivaron la presentación de la demanda de epígrafe. Por último, arguyó que el Estado tiene pleno conocimiento de lo sucedido, lo que hacía inaplicable el requisito de notificarle sobre la intención de presentar una demánda en su contra.

Por su parte, el señor Figueroa Solís, por conducto del Departamento de Justicia, presentó una réplica a la oposición de la parte demandada, mediante la cual enfatizó que la demanda debía ser desestimada con perjuicio al amparo de la Regla 10.2 (5) de Procedimiento Civil, *infra.*[8] Ello, debido a que, a su entender, el foro primario no tenía jurisdicción primaria exclusiva sobre la controversia, sino la CASP.  No obstante, sostuvo que, aun en el caso de que el tribunal determinara que poseía jurisdicción sobre el asunto, no respondía en su carácter personal por los daños alegados.

Por su parte, el ELA, en representación del Negociado de la Policía de Puerto Rico, presentó una *Réplica a la Oposición de la Moción de Desestimación.*[9] Planteó que la CASP poseía autoridad legal para conceder todos los remedios solicitados por la señora Concepción Santana, incluyendo los daños y perjuicios, específicamente motivados por discrimen. Asimismo, arguyó que las cartas de notificación de posible demanda, así como la propia demanda, aludieron a temas que requerían el agotamiento de remedios administrativos pues, a su entender, la parte demandante no podía entablar alegaciones de discrimen y represalias sin antes haberse resuelto las querellas administrativas.

Por otro lado, el 14 de diciembre de 2024, la señora Concepción Santana presentó su escrito en oposición a las solicitudes de desestimación del señor Luciano Rivas y la señora

---

[8] *Íd.,* Entrada 39, *Réplica a la Oposición de la Moción de Desestimación de la Parte Compareciente en su Carácter Personal.*
[9] *Íd.,* Entrada 40, *Réplica a la Oposición de la Moción de Desestimación.*

Díaz Torres.[10] Razonó que se justificaba preterir el trámite administrativo y que no les asistía la razón a las partes codemandadas en sus planteamientos de que no se presentaron alegaciones en su contra. Indicó que de la demanda se desprendía inequívocamente que fue objeto de represalias y discrimen tanto por parte del señor Luciano Rivas como de la señora Díaz Torres por declarar como testigo en defensa de una compañera de trabajo.

En respuesta, el 17 de diciembre de 2024, el señor Luciano Rivas y la señora Díaz Torres, por conducto del Departamento de Justicia, presentaron conjuntamente una *Réplica a la Oposición de la Moción de Desestimación de la Parte Compareciente en su Carácter Personal* mediante la cual reafirmaron los planteamientos esbozados en sus escritos anteriores.[11]

Así las cosas, el 20 de noviembre de 2025, pero notificada al día siguiente, el foro primario emitió la *Sentencia* objeto de revisión.[12] Mediante el referido dictamen, el tribunal declaró *ha lugar* las solicitudes de desestimación instadas por las partes codemandadas. El foro apelado razonó que la señora Concepción Santana no presentó alegación alguna sobre la debida notificación al ELA, en incumplimiento con el Art. 2-A de la Ley Núm. 104-1955, *infra*. Además, indicó que la misiva de la señora Concepción Santana, fechada el 25 de julio de 2024, no cumplía con los requisitos de contenido y notificación establecidos en el precitado estatuto, pues no incluía las fechas de los incidentes que presuntamente ocasionaron daños a la demandante, ni alertaba sobre los múltiples incidentes alegados en la demanda.

Además, señaló que, según las alegaciones contenidas en la demanda, existían trámites administrativos internos en curso, sobre

---

[10] *Íd.,* Entrada 42, *Oposición "Moción de Desestimación de la Parte Compareciente en su Carácter Personal" (entradas 29 y 30).*

[11] *Íd.,* Entrada 43, *Réplica a la Oposición de la Moción de Desestimación de la Parte Compareciente en su Carácter Personal (entradas 29 y 30).*

[12] *Íd.,* Entrada 59, *Sentencia.*

los cuales no existía alegación que demostrara que se había emitido una determinación final, lo que permitía razonablemente inferir que éstos aún no habían concluido. Asimismo, indicó que la señora Concepción Santana no presentó fundamentos que justificaran preterir el cauce administrativo ni que sustentaran violaciones a derechos administrativos que ameritaran prescindir de dicho cauce. En cuanto a la causa de acción por acoso laboral, el foro apelado estimó que la señora Concepción Santana no siguió el proceso establecido en la ley antes de acudir al tribunal para presentar su reclamación.

A su vez, el TPI reconoció que a los funcionarios codemandados les cobija la doctrina de inmunidad condicionada, porque sus actuaciones se llevaron a cabo en el desempeño de sus funciones y no hay alegaciones de que éstos actuaran con intención maliciosa, lo que implicaba la inexistencia de una causa de acción contra estos funcionarios en su carácter personal. Por todo lo anterior, concluyó que correspondía ordenar la desestimación de la demanda de epígrafe.

En desacuerdo, la señora Concepción Santana instó una *Moción Solicitando Reconsideración de Sentencia.*[13] Fundamentó su posición en que su reclamación no presentaba cuestiones de derecho que exigieran el ejercicio de discreción y de peritaje administrativo y la jurisdicción primaria del foro administrativo podía ceder ante un planteamiento de violación de derechos constitucionales. Concluyó que la demanda contenía alegaciones suficientes que, interpretadas conforme al principio de liberalidad procesal, planteaban controversias de hecho y de derecho que ameritaban la adjudicación en sus méritos por el tribunal.

---

[13] *Íd.,* Entrada 60, *Moción Solicitando Reconsideración de Sentencia.*

Por su parte, el ELA, por sí y en representación del Negociado de la Policía de Puerto Rico y el Departamento de Justicia en representación del señor Figueroa Solís, el señor Luciano Rivas y la señora Díaz Torres, presentaron conjuntamente una *Moción en Oposición a Solicitud de Reconsideración de Sentencia.*[14] En ésta, expresaron su conformidad con la determinación emitida por el foro primario y sostuvieron, *inter alia,* que el hecho de que la parte demandada alegara asuntos constitucionales no constituía de por sí causa suficiente para preterir el agotamiento del cauce administrativo.

Evaluados los escritos de todas las partes, mediante *Orden,* notificada el 22 de enero de 2026, el TPI declaró *no ha lugar* a la moción de reconsideración.[15]

Insatisfecha aún, el 20 de febrero de 2026, la señora Concepción Santana acudió ante este foro revisor mediante recurso de *Apelación* y señaló que el foro primario cometió el siguiente error:

> Erró el Honorable TPI, al declarar Ha Lugar las solicitudes de desestimación presentadas por el Estado Libre Asociado de Puerto Rico por sí y en representación del Departamento de Seguridad Pública (Negociado de la Policía de Puerto Rico) y el Departamento de Justicia, el comandante Rafael A. Figueroa Solís, el coronel Samuel Luciano Rivas y la coronel Alba I. Díaz Torres, siendo estos responsables de los daños sufridos por la demandante quien ha sido objeto de represalias, discrimen por sexo y discapacidad, hostigamiento laboral continuo, interferencia en sus labores y actos relacionados, que afectan su salud física, emocional y tranquilidad, privándole así el derecho de su día en corte y no proveyendo ningún remedio administrativo por los daños sufridos.

El 24 de marzo de 2026, el Estado Libre Asociado de Puerto Rico, el comandante Rafael A. Figueroa Solís y los coroneles Samuel Luciano Rivas y Alba I. Díaz Torres, en sus capacidades personales, por conducto de la Oficina del Procurador General, presentaron su

---

[14] *Íd.,* Entrada 62, *Moción en Oposición a Solicitud de Reconsideración de Sentencia.*
[15] *Íd.,* Entrada 63, *Orden.*

*Alegato en Oposición*[16]. Sostienen que el foro apelado correctamente desestimó las causas de acción sobre discrimen, acoso laboral y represalias incoadas por la señora Concepción Santana, toda vez que ésta, previo a instar su reclamo judicial, incumplió con el requisito de notificar al Estado su intención de presentar una demanda en su contra y tampoco agotó los remedios administrativos disponibles. Indicaron, además, que el TPI también aludió correctamente la doctrina de inmunidad cualificada, ya que la demanda carecía de alegaciones que demostraran la intención maliciosa requerida para derrotar la antedicha protección.

## II.

## A.

Las *alegaciones* son "los escritos mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas".[17] Su propósito es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes".[18] Por tanto, cualquier alegación mediante la cual una parte solicite un remedio – por ejemplo, una demanda – incluirá una relación sucinta y sencilla de los hechos que demuestran que procede el remedio solicitado y la solicitud del remedio que se alega debe concederse.[19]

Por su parte, la Regla 10.2 de Procedimiento Civil[20], permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra. La mencionada regla establece lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las

---

[16] *Alegato en Oposición*, SUMAC-TA del recurso TA2026AP00188, Entrada 2.
[17] *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1061 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, Sec. 2202, pág. 279.
[18] *Íd.,* pág. 1062.
[19] Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1.
[20] 32 LPRA Ap. V, R. 10.2.

siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:

(1) falta de jurisdicción sobre la materia;

(2) falta de jurisdicción sobre la persona;

(3) insuficiencia del emplazamiento;

(4) insuficiencia del diligenciamiento del emplazamiento;

**(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**

(6) dejar de acumular una parte indispensable.[21]

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y considerarlos de la manera más favorable a la parte demandante.[22] Dentro del ejercicio de su discreción, el foro primario no deberá desestimar la demanda a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[23] Es decir, la desestimación procede cuando de los hechos bien alegados en la demanda no se puede identificar una relación entre los hechos alegados y el derecho sustantivo que genera la responsabilidad del demandado hacia el demandante.[24] Cónsono con lo anterior, a pesar de interpretar liberalmente la demanda, corresponde la desestimación si no hay remedio alguno disponible en nuestro estado de derecho.[25]

Por consiguiente, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una

---

[21] *Íd.* (Énfasis suplido).

[22] *BPPR v. Cable Media,* 215 DPR ___, 2025 TSPR 1 (resuelto el 7 de enero de 2025); *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 84 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015).

[23] *Cosme Mena v. Depto. Vivienda y otros,* 215 DPR ___, 2024 TSPR 131 (resuelto el 10 de diciembre de 2024); *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994).

[24] *Torres, Torres* v. *Serrano Torres,* 179 DPR 481, 501 (2010).

[25] *Ortiz Matías et al.* v. *Mora Development,* 187 DPR 649, 654 (2013).

reclamación válida.[26] Así pues, para que un demandado prevalezca cuando presente una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda probarse en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor.[27]

**B.**

La doctrina de inmunidad soberana impide que se presenten reclamaciones judiciales contra el Estado a menos que éste consienta en ser demandado,[28] y para ello, impuso ciertas restricciones.

En lo pertinente, el Artículo 2-A de la *Ley de Reclamaciones y Demandas contra el Estado,* Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 LPRA sec. 3077 *et seq.,* requiere que toda persona que interese entablar una reclamación por daños contra el Estado, notifique al Secretario de Justicia dentro de los noventa (90) días de ocurrido el incidente del que surge la reclamación.[29] En esa notificación se tiene que hacer constar la fecha, el lugar, la causa, y la naturaleza general del daño, los nombres y las direcciones de los testigos, la dirección del reclamante y el lugar donde se recibió el tratamiento médico. Si el reclamante estuviere mental o físicamente imposibilitado para hacer dicha notificación dentro del término prescrito, podrá hacerlo dentro de los treinta (30) días siguientes a la fecha en que cese la incapacidad. La reclamación judicial no podrá instarse si no se ha efectuado la notificación escrita en la forma y

---

[26] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534; *Eagle Security v. Efrón Dorado et al,* supra, pág. 84; *Cobra Acquisitions v. Mun. de Yabucoa et al.,* supra, pág. 396; *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505.
[27] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534.
[28] *Berríos Román v. ELA,* 171 DPR 549, 555 (2007).
[29] Art. 2-A de la Ley de Pleitos contra el Estado, *supra,* 32 LPRA sec. 3077a.

manera y dentro de los plazos prescritos, salvo si se muestra justa causa para ello.[30]

El Tribunal Supremo ha expresado que el requisito de notificación cumple los siguientes propósitos:

> 1- proporcionar al Estado la oportunidad de investigar los hechos que dan origen a la reclamación; 2- desalentar las reclamaciones infundadas; 3- propiciar un pronto arreglo de las reclamaciones; 4- permitir la inspección inmediata del lugar del accidente antes de que ocurran los cambios; 5- descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable; 6- advertir a las autoridades de la existencia de la reclamación para que provea la reserva necesaria en el presupuesto anual; y, 7- mitigar el importe de los daños sufridos mediante oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado.[31]

Asimismo, el Tribunal Supremo se ha negado a exigir de forma automática el requisito de notificación cuando:

> (1) la defensa de falta de notificación es renunciada por el Estado; (2) el funcionario a quien se ha de notificar y contra el cual se dirige la acción es el mismo, por lo que posee conocimiento personal sobre los hechos; (3) el riesgo de que la prueba objetiva desaparezca es mínimo y el Estado puede corroborarla fácilmente; (4) se entabla una acción directa contra la aseguradora; (5) una parte presenta una reconvención compulsoria, luego de que la entidad estatal inicia una acción en su contra en el término dispuesto en ley para notificar; (6) la parte ha demandado y diligenciado el emplazamiento en los noventa días que requiere la ley para notificar, y (7) la tardanza es no es imputable al demandante y torna inútil la notificación.[32]

A base de lo anterior, la notificación es un requisito de cumplimiento estricto, no jurisdiccional.[33] Sin embargo, los tribunales solo podrán aplazar o eximir del cumplimiento del requisito de notificación al Estado cuando la parte demuestre que existió justa causa para la dilación o el incumplimiento y ofrezca bases fácticas razonables que justifican la tardanza o el

---

[30] *Íd.*
[31] *Rosario Mercado v. ELA*, 189 DPR 561, 566 (2013). (Citas omitidas).
[32] *Toro Rivera v. ELA*, 194 DPR 393, 413-414 (2015). (Citas omitidas).
[33] *Rosario Mercado v. ELA*, supra, pág. 567; *Berríos Román v. ELA*, supra, pág. 560.

incumplimiento.[34] De modo que, si la parte concernida no cumple ambas exigencias, el tribunal carece de discreción para excusar su conducta.[35] En específico, "[d]eberá demostrarse la existencia de una justa causa con explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o la demora ocurrió por alguna circunstancia especial razonable. No podrá acreditarse la existencia de justa causa con excusas, vaguedades o planteamientos estereotipados".[36]

## C.

La inmunidad condicionada protege a los funcionarios públicos que ejercen funciones discrecionales, en su carácter personal, sobre las reclamaciones civiles en daños y perjuicios que estos puedan ocasionar en el desempeño de sus funciones, siempre y cuando sus actuaciones no violen derechos civiles o derechos claramente establecidos por la ley o la Constitución, de los cuales cualquier persona razonable hubiera tenido conocimiento.[37] De esta forma, se protege a los funcionarios públicos de reclamaciones frívolas que puedan impedir que estos descarguen los deberes y responsabilidades de sus cargos, dentro del ejercicio de sus funciones discrecionales.[38]

Ahora bien, la inmunidad condicionada no es una protección absoluta, porque tiene sus límites en su aplicabilidad. La inmunidad no cubre actuaciones dolosas, maliciosas o delictivas de un funcionario en el ejercicio de sus funciones. Por tanto, un funcionario público que actúa de mala fe y viole los derechos civiles o los derechos claramente establecidos por la ley o la Constitución, responde civilmente por los daños ocasionados. De hecho, aun

---

[34] *Toro Rivera v. ELA*, supra, págs. 414-415, citando a *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013).
[35] *Íd,* pág. 415.
[36] *Toro Rivera v. ELA,* supra, pág. 415.
[37] *De Paz Lisk v. Aponte Roque*, 124 DPR 472, 494-495 (1989).
[38] *Íd.*

cuando medie buena fe de parte del funcionario, este responde si actuó irrazonablemente o si debió saber que su conducta era ilegal.[39] La razonabilidad de la actuación oficial constituye una cuestión de hecho a determinarse caso por caso.[40]

Por ello, la inmunidad condicionada es una defensa afirmativa y el peso de la prueba recae sobre el funcionario demandado que reclame esta protección.[41] Si un funcionario público plantea que sus acciones estuvieron cobijadas bajo la inmunidad condicionada es recomendable que la controversia sea resuelta antes de la celebración del juicio. Ello, toda vez que el reconocimiento de la inmunidad condicionada implica la inexistencia de una causa de acción contra el funcionario público.[42]

El Tribunal Supremo ha establecido que cuando se le reconoce inmunidad a un funcionario público en el desempeño de sus deberes oficiales por la responsabilidad civil que pueda generar su conducta, la misma es separada y distinta de la del Estado.[43] La razón es que la inmunidad del funcionario público y la del Estado tienen orígenes distintos, porque la inmunidad del Estado se deriva de la doctrina de la inmunidad del soberano mientras que la de los funcionarios públicos se fundamenta en consideraciones de política pública. La inmunidad que ampara a los funcionarios públicos "opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir dichos funcionarios en el descargo de sus deberes y responsabilidades oficiales".[44] Sin embargo, la inmunidad que ampara al Estado "opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político".[45]

---

[39] *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256, 262 (1982).
[40] *Íd.*
[41] *Íd.,* pág. 263.
[42] *García v. ELA*, 163 DPR 800, 820-821 (2005).
[43] *Romero Arroyo v. ELA*, 127 DPR 724, 744 (1991).
[44] *García v. ELA*, supra*, pág. 820.
[45] *Íd.*

El efecto que produce la aplicación de la inmunidad a un funcionario público es que solamente se puede demandar al Estado por la responsabilidad de este, condicionado a las disposiciones de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como *Ley de Reclamaciones y Demandas contra el Estado,* 32 LPRA sec. 3077 *et seq.* El remedio que tiene el perjudicado es la acción en daños y perjuicios en contra del Estado.[46]

## D.

La jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias.[47] Como norma general, los tribunales de Puerto Rico, por ser de jurisdicción general, pueden entender cualquier materia sobre la cual no se les haya privado de jurisdicción.[48] Así, la jurisdicción sobre la materia se refiere a la capacidad que tiene un tribunal para atender y resolver controversias respecto a determinado aspecto legal.[49]

Las partes no le pueden conferir jurisdicción sobre la materia a los tribunales, ni estos pueden abrogársela *motu proprio*. Sólo el Estado, a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal.[50] Por lo tanto, una vez cuestionada, el tribunal debe examinar y evaluar con rigurosidad tal señalamiento, pues el mismo incide directamente sobre su poder para adjudicar.[51] Siendo la falta de jurisdicción insubsanable, procede la desestimación del pleito, toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho.[52]

Por su parte, las agencias administrativas, solo poseen aquellas facultades que les han sido conferidas expresamente

---

[46] *Romero Arroyo v. ELA*, supra, pág. 746; *Vázquez Negrón v. ELA*, 113 DPR 148, 151 (1982).
[47] *Pueblo v. Rivera Ortiz,* 209 DPR 402, 414 (2022); *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 268 (2018).
[48] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).
[49] *Íd.*
[50] *Íd.*
[51] *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012).
[52] *Íd.,* pág. 123.

mediante sus leyes habilitadoras, así como aquellas que resulten necesarias e indispensables para cumplir con sus deberes y responsabilidades.[53] Cuando la Asamblea Legislativa delega determinadas funciones gubernamentales en una agencia administrativa, puede surgir incertidumbre respecto a cuál foro, si el judicial o el administrativo, tiene la jurisdicción original para atender controversias con dichas funciones delegadas.[54]

En ese contexto surge la doctrina de jurisdicción primaria, la cual constituye una norma de autolimitación judicial reconocida en nuestro ordenamiento jurídico.[55] Esta doctrina tiene como propósito atender situaciones en las que existe la interrogante sobre qué foro debe intervenir primero, determinando si corresponde a la agencia administrativa o al tribunal ejercer la facultad inicial de atender y adjudicar en al asunto.[56]

Lo anterior no implica que la jurisdicción de los tribunales haya sido descartada, sino que se trata de un asunto de prioridad donde la jurisdicción del foro judicial es meramente aplazada o pospuesta.[57] En su aplicación, la doctrina en discusión requiere que:

> los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito. Además, le exige que ponderen y determinen si es imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia.[58]

Para poder determinar a cuál foro le corresponde atender un reclamo planteado por primera vez, la doctrina de jurisdicción primaria se divide en dos vertientes: la jurisdicción primaria

---

[53] *CBS Outdoor v. Billboard One, Inc. et al.*, 179 DPR 391, 403 (2010).
[54] *Rodríguez Rivera v. De León Otaño*, supra, pág. 709.
[55] *Vázquez et al. v. DACo*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).
[56] *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 102 (2020).
[57] *CBS Outdoor v. Billboard One, Inc. et al., supra*, pág. 404*; Ortiz v. Panel FEI*, 155 DPR 219, 243 (2001).
[58] *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 430 (2012).

exclusiva y la jurisdicción primara concurrente.[59] La primera atiende la situación en la que la propia ley establece que la agencia es el foro que inicialmente cuenta con jurisdicción exclusiva para entender la controversia, mientras que la segunda se da cuando la ley autoriza que se presente la reclamación en cualquiera de los dos foros, ya sea en el administrativo o en el judicial.[60]

La jurisdicción primaria exclusiva es realmente una estatutaria, y no una norma de índole jurisprudencial, dado que se trata de un mandato legislativo puesto que la ley no deja margen de duda en cuanto a la inexistencia de jurisdicción concurrente con los tribunales.[61] A esos efectos, la asignación de jurisdicción exclusiva a un organismo administrativo debe desprenderse expresamente de la ley habilitadora o surgir de la misma por implicación necesaria.[62] Como resultado, los tribunales quedan excluidos de intervenir en primer lugar en las materias o asuntos sobre los cuales se le ha conferido jurisdicción exclusiva a una agencia.[63] No obstante, la jurisdicción primaria exclusiva no soslaya la revisión judicial, solo la pospone hasta que el organismo administrativo emita su decisión final.[64]

Por otro lado, la jurisdicción primaria concurrente se manifiesta cuando la ley permite que la reclamación sea incoada ante un tribunal o agencia administrativa, compartiendo ambos foros la facultad de entender en un mismo asunto.[65] Dicha vertiente presupone que tanto el foro judicial como el administrativo tienen jurisdicción para entender la controversia planteada, pero se cede la primacía a la agencia por su pericia, especialización y conocimiento

---

[59] *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 326 (2004).
[60] *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 676 (2009).
[61] *JJJ Adventure v. Consejo de Titulares y otros*, 216 DPR ___ (2025), 2025 TSPR 123 (resuelto el 25 de noviembre de 2025).
[62] *Báez Rodríguez v. ELA,* 179 DPR 231, 241 (2010).
[63] *Rodríguez Rivera v. De León Otaño*, supra, pág. 709.
[64] *CBS Outdoor v. Billboard One, Inc. et al., supra*, pág. 405; *SLG Semidey Vázquez v. ASIFAL,* supra, pág 677.
[65] *Rodríguez Rivera v. De León Otaño, supra*, pág. 710.

sobre el asunto objeto de la reclamación.[66] El fundamento de ello estriba "en la deferencia judicial que merecen las agencias administrativas dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos".[67]

De otra parte, la doctrina de agotamiento de remedios administrativos es también una norma de autolimitación judicial, pero se configura en supuestos distintos. En específico, al amparo de la doctrina de agotamiento administrativo, una parte que desea obtener un remedio en una agencia debe utilizar todos los medios administrativos disponibles antes de acudir a un tribunal.[68] Ello implica que la revisión judicial no está disponible hasta tanto la parte afectada haya utilizado todos los procedimientos correctivos ofrecidos por el procedimiento administrativo.[69]

La doctrina de agotamiento de remedios administrativos cumple varios objetivos, tales como permitir que la agencia desarrolle un historial completo del asunto ante su consideración, asegurar que la agencia pueda adoptar las medidas correspondientes de conformidad con la política pública formulada por una entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. En otro extremo, facilita la revisión judicial, porque asegura que los tribunales tengan información más precisa sobre el asunto en controversia y les permite tomar una decisión más informada. También, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial.[70]

No obstante, existen varios factores que operan a favor de preterir la doctrina de agotamiento de remedios. Éstos son: (1)

---

[66] *JJJ Adventure v. Consejo de Titulares y otros*, supra; *Beltrán Cintrón et al. v. ELA et al.*, supra, pág. 103.
[67] *CBS Outdoor v. Billboard One, Inc. et al.*, *supra*, pág. 405.
[68] *AAA v. UIA,* 200 DPR 903, 913 (2018).
[69] *Íd.*
[70] *Íd.,* pág. 914.

cuando dar curso a la acción administrativa cause un daño inminente, material y sustancial, no teórico o especulativo; (2) cuando el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado; (3) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado; o (4) cuando el asunto es estrictamente de derecho.[71]

Sin embargo, una mera alegación de violación a derechos constitucionales o la ineficacia de los remedios administrativos no justifica eludir el proceso administrativo.[72] El solicitante que pretenda desviarse del trámite administrativo alegando violación a un derecho constitucional tiene la obligación de demostrar que el agravio al referido derecho es de tan grave y patente intensidad, que se justifica eludir el cauce administrativo.[73]

### III.

En el recurso ante nos, la señora Concepción Santana alegó que el Tribunal de Primera Instancia erró al desestimar la demanda presentada por ésta aun cuando los codemandados fueron responsables de los daños sufridos por su persona, privándole así del derecho a su día en corte y de la posibilidad de obtener algún remedio. Ello luego de que el foro primario ordenara la desestimación con perjuicio del pleito al concluir que carecía de jurisdicción para atenderlo bajo los siguientes fundamentos: (1) incumplimiento con los requisitos de notificación establecidos por la Ley Núm. 104-1955, *supra*, (2) que la apelante debió continuar con el proceso administrativo provisto por la agencia para dilucidar su reclamo, (3) que la apelante no adujo fundamentos para justificar la

---

[71] *ORIL v. El Farmer, Inc.*, 204 DPR 229, 240 (2020).
[72] *Acevedo v. Mun. de Aguadilla*, 153 DPR 788, 806-807 (2001).
[73] *Procuradora Paciente v. MCS*, 163 DPR 21, 37 (2004); *Guzmán y otros v. ELA*, 156 DPR 693, 714 nota 19 (2002), citando a *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 357 (1988).

pretericón del cauce administrativo y (4) por ser de aplicación la doctrina de inmunidad condicionada.

De entrada, es menester puntualizar nuevamente que la Ley de Pleitos contra el Estado, *supra*, dispone que la notificación, además de realizarse, de ordinario, dentro de noventa (90) días desde que el reclamante tuvo conocimiento de los daños, deberá hacerse por escrito y "[hacer] constar; en forma clara y concisa, **la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y direcciones de sus testigos,** y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia".[74] Si no se efectúa la notificación de la forma y manera y dentro de los plazos prescritos, sin que medie justa causa para ello, no podrá iniciarse acción judicial de clase alguna contra el Estado.[75]

Ahora bien, al aplicar lo antes expuesto al caso ante nuestra consideración, forzoso es concluir que la parte apelante no cumplió con los requisitos dispuestos en el Artículo 2-A de la Ley de Pleitos contra el Estado, *supra*, toda vez que la alegada notificación carecía de la especificidad requerida[76]. La señora Concepción Santana se

---

[74] Art. 2-A de la Ley de Pleitos contra el Estado, *supra*, 32 LPRA sec. 3077a (a).
[75] Art. 2-A de la Ley de Pleitos contra el Estado, *supra*, 32 LPRA sec. 3077a (e).
[76] La señora Concepción Santana expresó en su notificación lo siguiente:
> "En cumplimiento con el requisito de Ley, quiero reiterar una notificación dentro de los noventa (90) días jurisdiccionales, por lo cual procedo a narrar lo que sigue: Que tuve un incidente mientras laboraba, en el cual me lesioné la muñeca, rodilla y hombro, estando referida al Fondo del Seguro del Estado. Llevo en tratamiento 3 años, en los cuales retomé mi labor. Enviando unas recomendaciones médicas al Negociado de la [P]olicía de Puerto Rico. Luego de ser evaluada por el m[é]dico NPPR, entregué ambas recomendaciones médicas al Teniente Coronel, Samuel Luciano Rivas 2-12468, quien procedió a entregarme una asignación de nuevas funciones administrativas no solicitada. Al día siguiente, radiqué querella en la Superintendencia Auxiliar de Responsabilidad Profesional, razón por la cual el Coronel, Juan Cáceres Méndez 1-12896, me realiza unas medidas provisionales designado al Comandante, Rafael Figueroa Sol[í]s 3-16831, como mi supervisor. El Teniente Coronel Samuel Luciano Rivas, me hace cita m[é]dica con el médico de la polic[í]a, sin mi consentimiento, y me otorgan recomendaciones de desarme, y luego me nombran coordinadora de planes. En el ambiente laboral fui testigo de abuso laboral de parte del Teniente Coronel Luciano Rivas a la Sargento Lisette M. D[í]az Flores placa 8-16262, en donde comenzó una

limitó a notificar su intención de demandar al Estado, omitiendo incluir las fechas de los incidentes en los cuales se le ocasionaron los presuntos daños, lo cual constituye un factor medular para determinar cuándo comienza a decursar el término de noventa (90) días para notificar al Estado. Además, la referida notificación no constituyó una notificación adecuada de todos los reclamos esbozados en la demanda, ya que en dicha comunicación la señora Concepción Santana se limitó a hacer referencia a asuntos relacionados con las funciones que le fueron asignadas luego de las recomendaciones médicas referidas por la Corporación del Fondo del Seguro del Estado, mientras que en el recurso presentado ante el tribunal detalló múltiples actuaciones, presuntamente discriminatorias y en represalias en su contra. Asimismo, omitió incluir los nombres y direcciones de los testigos, si alguno.

Por lo cual, la señora Concepción Santana no cumplió con su deber de advertirle al Estado, conforme a derecho, sobre la reclamación en su contra, colocándolo en un estado de indefensión al impedirle activar oportunamente sus mecanismos de investigación, preparar adecuadamente su defensa o evaluar la posibilidad de transigir la reclamación.[77] Ante ello, al no haberse establecido justa causa para el incumplimiento con los requisitos

---

persecución de parte del Teniente Coronel Luciano Rivas, hacia mí.

Todos estos hechos antes expuestos, y conductas relacionadas ya antes expresadas, por las acciones y omisiones negligentes, dolosas y torticeras, provocaron en la aquí suscribiente, angustias mentales, malestar físico, pérdidas económicas, bochorno público, insomnio, y riesgos a mi seguridad, siendo todo ello constitutivo de daños y perjuicios y atribuibles a la responsabilidad de todos los funcionarios y entidades del Estado involucrados en este caso.

Mediante la presente reitero mi notificación a tenor de la notificación dentro de los noventa (90) días jurisdiccionales e informo que estoy evaluando radicar demanda por los daños y perjuicios acaecidos por razón de la conducta negligente y dolosa, como de omisiones y negligencia de la Policía de Puerto Rico, sus funcionarios y por ende del Estado, siendo toda esta conducta antes expuesta una continua y reiterada hasta el día de hoy, constituyendo también daños continuos.

[77] *Romero Arroyo v. ELA,* supra, pág. 734, citando a *Rivera de Vincenti v. ELA,* 108 DPR 64 (1987).

estatutarios, la notificación efectuada al Secretario de Justicia resultó defectuosa. En consecuencia, al amparo de la Ley de Pleitos contra el Estado, *supra,* no podía iniciarse acción judicial alguna contra el ELA.

De otra parte, del propio recurso ante nos y de la demanda surge que la señora Concepción Santana presentó múltiples querellas administrativas ante la agencia correspondiente, incluyendo la que fue identificada como querella núm. 2024-00672 en la SARP. No obstante, del expediente se desprende que dicha querella aún no ha sido resuelta. Por lo que, en tales circunstancias, corresponde a la agencia administrativa, en primera instancia, atender y adjudicar la controversia planteada, toda vez que es la entidad que posee el conocimiento especializado para evaluar los hechos y aplicar la normativa administrativa pertinente. Así pues, mientras el procedimiento administrativo permanezca pendiente de resolución final, los tribunales debemos abstenernos de intervenir prematuramente, en deferencia al principio de jurisdicción primaria. Una vez concluya el trámite administrativo, la parte adversamente afectada por la decisión de la agencia podría recurrir en revisión judicial ante este Tribunal de Apelaciones, por ser foro con jurisdicción para revisar las decisiones administrativas de los entes administrativos.

Además, cabe señalar que, aun cuando la señora Concepción Santana alega la violación de sus derechos constitucionales, es norma firmemente establecida que ello no justifica por sí solo la preterición del cauce administrativo. Ello ante la ausencia de alegaciones específicas sobre la insuficiencia del trámite administrativo. Si la parte apelante entiende que la agencia ha incumplido su obligación de adjudicar el caso dentro del término provisto en la LPAU, tiene disponible como remedio presentar un recurso de *mandamus.*

Por último, la señora Concepción Santana sostiene que los hechos alegados en la demanda demuestran que los codemandados, a saber, los señores Figueroa Solís y Luciano Rivas, así como la señora Díaz Torres, fueron los causantes de los daños sufridos por su persona. A su vez, afirma que las actuaciones ilegales y discriminatorias de éstos demuestran claramente una violación de derechos, lo cual amerita que el asunto sea atendido por el tribunal. *No le asiste la razón, veamos.*

En apretada síntesis, la señora Concepción Santana alegó en su demanda que, alrededor de septiembre 2022, declaró en defensa de una sargento que había radicado una querella administrativa en contra del señor Luciano Rivas, comandante del área de Humacao. Sostuvo que, a partir de ese momento, fue objeto de represalias y discrimen por discapacidad por parte de los coroneles Luciano Rivas y Díaz Torres. Además, alegó que, después de prestar testimonio en defensa de la referida sargento, surgieron diversas situaciones, entre ellas: la suspensión del privilegio de uso de un vehículo oficial, su relevo de las funciones como coordinadora enlace del Programa de Adiestramiento de Campo y la asignación de nuevas funciones administrativas que la relegaron de sus tareas operacionales.

Así pues, luego de examinar detenidamente las alegaciones de la demanda en la forma más favorable a la señora Concepción Santana, advertimos que éstas se fundamentan en actuaciones alegadamente realizadas por los oficiales dentro del marco del desempeño de sus funciones oficiales como coroneles y comandante de la Policía de Puerto Rico. Sin embargo, la demanda carece de alegaciones específicas sobre negligencia e incumplimiento de obligaciones legales o imputaciones de responsabilidad directa y personal en contra de dichos funcionarios.

De la demanda tampoco se desprenden alegaciones o imputaciones tendentes a demostrar que los funcionarios públicos

incurrieran en conducta intencional, maliciosa o delictiva, o que ejercieran sus funciones de mala fe o de forma irrazonable. La jurisprudencia exige que se demuestre la mala fe y plena consciencia de la ilicitud de la decisión tomada, para que pueda prosperar una acción en daños contra el funcionario. En el presente caso, la demanda está huérfana de detalles que permitan concluir que, tomando los hechos como ciertos, procede una acción de daños contra los oficiales en su carácter personal.

Por tanto, asumiendo que las actuaciones imputadas a estos funcionarios hubiesen sido negligentes, de conformidad con la doctrina de inmunidad condicionada, no es posible imponerles responsabilidad personal por los presuntos daños ocasionados en el desempeño de sus funciones. Tal y como reseñamos, la inmunidad condicionada de los funcionarios del gobierno opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir estos funcionarios en el descargo de sus deberes y responsabilidades oficiales. De los hechos bien alegados en la demanda no surge que la señora Concepción Santana incluyera detalles que permitieran soslayar la referida inmunidad.

Conforme a lo anterior, y luego de la debida consideración de los planteamientos formulados, resolvemos que el reclamo de la señora Concepción Santana no justificaba la concesión de un remedio en cuanto a los codemandados y, a su vez, que el foro primario carecía de jurisdicción para atender la controversia instada contra el Estado. Por tanto, actuó correctamente el foro apelado al conceder las solicitudes de desestimación instadas por la parte apelada y, en consecuencia, ordenar la desestimación de la demanda, a tenor con la Regla 10.2 de Procedimiento Civil, *supra.* En consecuencia, procede confirmar el dictamen apelado en su totalidad.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia,* emitida el 20 de noviembre de 2025 y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Humacao.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones